IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| YOLANDA M. CORBIN,           :<br>                              :<br>     Plaintiff,              :<br>  v.                         :     CIVIL ACTION NO.<br>                              :<br>                              :<br>                              :<br>PLANNED PARENTHOOD OF        :<br>DELAWARE, INC.               :<br>                              :<br>     Defendant.              : | |

## COMPLAINT

1. Plaintiff, Yolanda M. Corbin ("Plaintiff") is a resident of the State of Delaware, and resides at 817 Kirkwood Street, Wilmington, DE 19801.

2. Defendant, Planned Parenthood of Delaware, Inc. ("Defendant" or "Planned Parenthood Delaware") has a principal place of business located at 625 N. Shipley Street, Wilmington, Delaware, 19801. Planned Parenthood Delaware is duly-organized and exists as a non-profit corporation under the laws of the State of Delaware.

3. This action arises under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §2000e et. seq., the Family and Medical Leave Act ("FMLA"), 29 U.S.C.A. § 2611 et. seq., and the Delaware Law Against Discrimination ("LAD"), 19 Del. § 710 et. seq.

4. Plaintiff brings this action to redress the wrongs done to her by Defendant's discrimination against her on the basis of her race, by Defendant's sexual harassment, by Defendant's retaliation against her for attempting to exercise her rights under the FMLA and by Defendant's inference with her rights under the FMLA.

5. Plaintiff is African-American.

6.    At all times relevant hereto, Defendant was acting through its agents, servants and employees, who were authorized and acting within the scope of their authority, course of employment, and under the direct control of Defendant.

## JURISDICTION AND VENUE

7.    This Court has jurisdiction over the subject matter of this civil action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16. Plaintiff exhausted her administrative remedies by timely filing a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a right to sue letter on August 1, 2018, and this action is timely filed within 90 days of issuance of said right to sue letter. See a true and correct copy of the EEOC Right to Sue Letter attached hereto as Exhibit "A."

8.    This Court has jurisdiction over the subject matter of this civil action pursuant to the FMLA, 29 U.S.C.A. § 2617(a)(2)(A), as this action is timely pursuant to 29 U.S.C.A. § 2617(c)(1) as this action was brought within two years of Plaintiff's termination on August 14, 2017.

9.    This Court has supplemental jurisdiction over this civil action pursuant to 28 U.S.C.A. § 1367(a) as Plaintiff's Delaware LAD claim arises out of the same case or controversy as Plaintiff's federal causes of action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16, and the FMLA, 29 U.S.C.A. § 2167(a)(2)(A). The Delaware Division of Industrial Affairs issued a right to sue letter on July 2, 2018, and this action is timely filed within 90 days of issuance of the federal right to sue letter on August 1, 2018.

10. Venue is proper in the District of Delaware under 42 U.S.C. Section 2000e-5(f)(3) and 28 U.S.C. Sec 1391(b)(2) as the acts alleged as the bases for the claims arose in this District, Plaintiff resides in this District and the events giving rise to the action occurred in this District.

## STATEMENT OF FACTS

11. In February of 2015, Plaintiff was recruited to work for Planned Parenthood Delaware as a Revenue Cycle Manager at Defendant's administrative office located at 625 N. Shipley Street, Wilmington, Delaware, 19801. She began working for Planned Parenthood Delaware on or about March 2, 2015. She was recruited by her former supervisor, William Holmes, who was the Vice President of Finance for the Defendant at that time.

12. Upon learning that Plaintiff had accepted the Revenue Cycle Manager position, Mr. Holmes, sent Plaintiff an email message, warning her of Planned Parenthood Delaware's significant issues with discrimination for people of color, stating "As I indicated during the interview process, we have MANY 'challenges' (read between the lines); but I feel that you are 'up to the challenge!'"

13. Plaintiff worked at Planned Parenthood Delaware for nearly two years with good performance reviews and without any reprimands, verbal or otherwise.

14. In December of 2016, Plaintiff informed Planned Parenthood Delaware that she would be required to take time off from work due to her hypoglycemia and diabetes.

15. On January 3, 2017, Plaintiff received a "verbal warning" (which for all intents and purposes was her first written warning) from her supervisors Amelia Auner and Karen Bostic. Plaintiff's supervisors cited her for leaving work at 2:30 p.m. on December 23, 2016, even though she discussed with another Planned Parenthood Delaware manager that she would

be leaving early (ensuring that at least one manager was still in the building) and left to make a bank deposit for Planned Parenthood Delaware.

16. Further, Plaintiff was cited in the "verbal warning" for repeatedly parking in the Planned Parenthood Delaware parking lot, instead of an off-campus parking lot, even though Plaintiff notified her supervisor that she would only be utilizing the parking lot on January 3, 2017, because she was unable to access the off-campus parking lot she ordinarily used. No other dates were provided of Plaintiff's alleged repeated use of the Planned Parenthood Delaware parking lot.

17. Plaintiff's supervisor responded to her email regarding Plaintiff's use of the Planned Parenthood Delaware parking lot on January 2, 2017, but never mentioned that Plaintiff's actions were in violation of any Planned Parenthood Delaware policy or the basis for reprimand, instead Plaintiff's supervisor suggested an alternative parking lot Plaintiff could try if she was having issues accessing her normal parking lot. There was also no mention Plaintiff had repeatedly been warned or instructed not to park in the Planned Parenthood Delaware parking lot.

18. The "verbal warning" also noted that Plaintiff was exhibiting "insubordinate behavior", and additional training and resources for development of management skills would be provided as needed.

19. On or about March 9, 2017, Plaintiff's supervisor, Amelia Auner required Plaintiff to develop a contingency plan for the Planned Parenthood Delaware's call center for times when Plaintiff was taking FMLA-certified leave, PTO, sick time, or was attending Planned Parenthood Delaware approved training.

20. Upon information and belief, Defendant's management never required any other employees to develop contingency plans for their absence from work, and Plaintiff's supervisor specifically directed her to do so as part of her general animus towards Plaintiff and her attempts to exercise her rights under the FMLA.

21. In June of 2017, Plaintiff's supervisors informed her that she needed to move out of her office, and away from other senior staff members, and closer to the call center.

22. Defendant then moved a White employee into Plaintiff's former office.

23. On June 14, 2017, Plaintiff wrote to Planned Parenthood Delaware's human resources manager, D'Andrea Walker regarding significant issues that she was experiencing with her work environment, including pushback from her supervisors regarding her need to leave for doctor's appointments and other medical related activities, and the lack of explanation for why she was forced to move offices.

24. In response to Plaintiff's email complaint, Planned Parenthood Delaware's management met with Plaintiff over the course of the next two days and Plaintiff was told that she had "significant performance issues" at work, and there was documentation that substantiated this claim.

25. Plaintiff had only received satisfactory performance reviews prior to July 2017, and her only discipline prior to July 2017 was the "verbal warning."

26. In July of 2017, Plaintiff was given a substandard performance evaluation in July 2017, just one month after she complained of racial discrimination and FMLA violations.

27. Moreover, Plaintiff's supervisors forced her to agree to a "Performance Improvement Plan," due to her substandard performance evaluation, which required Plaintiff

work an additional two and a half hours beyond her normal workday. She would be required to work the customer service phone lines at the call center, from 4:30 p.m. until 7:00 p.m.

28. The Performance Improvement Plan, and particularly Plaintiff's added work hours requirement was in direct violation of her primary care physician's orders, as part of her Planned Parenthood Delaware approved FMLA plan.

29. On or about August 14, 2017, Defendant terminated Plaintiff's employment. Planned Parenthood Delaware issued a written notice of termination, which stated that was Plaintiff was terminated based on her impermissibly requesting employee compensation information from a co-worker, under the guise of a work-related project, among other things.

30. The reasons proffered by Defendant for Plaintiff's termination were pretextual and intended to mask the true reasons for said action, i.e. discrimination against Plaintiff on the basis of her race and retaliation for her exercise of her rights under the FMLA.

31. In addition to discrimination and retaliation, over the course of Plaintiff's employment with the Defendant, Planned Parenthood Delaware employee, Ms. Nicole Frost continually sexually harassed Plaintiff by repeatedly sending Plaintiff unwanted, sexually explicit text messages, and engaging in offensive and unwanted touching of Plaintiff.

32. By way of example, one text from Ms. Frost read: "Why u miserable?? You didn't get any dick this weekend??"

33. On numerous occasions Ms. Frost attempted to inappropriately touch Plaintiff's buttocks and breasts, and fondled Plaintiff's breasts on multiple occasions.

34. Ms. Frost was seen attempting to touch and touching Plaintiff inappropriately at Planned Parenthood Delaware by Plaintiff's supervisor and the Vice President Finance, Karen Bostic. Ms. Bostic stated on numerous occasions, that she "didn't see or hear anything" in

response to Mr. Frost's offensive and unwanted touching.  D'Andrea Walker, Director of Human Resources, also heard Ms. Frost make inappropriate and sexually explicit comments to Plaintiff.

35. On another occasion Ms. Frost explicitly asked Plaintiff if her husband's penis was "the size of a cucumber."

36. On numerous other occasions Ms. Frost referred to Plaintiff as a "bitch."

37. As a direct result of the actions of Defendant, Plaintiff has suffered damages, including but not limited to, severe emotional distress, pain and suffering, mental anguish, humiliation and wage loss.

38. The wrongful acts committed by Defendants by and through their agents, as stated hereinabove, were willful, wanton, and committed in bad faith.

## COUNT I
(Racial Discrimination in Violation of Title VII)

39. The foregoing paragraphs are incorporated herein as if set forth in full.

40. The Defendant's conduct as alleged at length herein constitutes discrimination based on race in violation of Title VII.

41. The Defendant's acts of discrimination as aforesaid were intentional, willful, and in reckless disregard of Plaintiff's rights.

42. As a direct and proximate result of Defendant's unlawful discrimination and retaliation by and through its agents and employees, Plaintiff has been injured and has suffered, and will continue to suffer pain, fear, humiliation, anxiety, depression, mental anguish, emotional distress, physical manifestations of anxiety, lost wages, and lost benefits.

**WHEREFORE**, Plaintiff requests that this Honorable Court award her:

    (a) the sum of $300,000.00 in compensatory damages suffered because of the discrimination and retaliation

    (b)    punitive damages;

    (c)    back and front pay;

    (d)    costs and reasonable attorneys' fees incurred with this lawsuit with interest thereon; and

    (e)    other damages and further relief as deemed just.

## **COUNT II**
(Hostile and Abusive Working Environment in Violation of Title VII and Retaliatory Discharge)

43.    The foregoing paragraphs are incorporated herein as if set forth in full.

44.    Based on the foregoing, Defendant has engaged in unlawful practices in violation of Title VII because of Plaintiff's race including, but not limited to, perpetuating a hostile work environment, subjecting Plaintiff to unlawful race discrimination and harassment, subjecting Plaintiff to more onerous working conditions after she complained about the discrimination and harassment, and terminating Plaintiff's employment in retaliation for opposing racial discrimination and harassment.

45.    As a direct result of Defendant's unlawful discriminatory practices in violation of Title VII, Plaintiff has sustained loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earnings power, plus back pay, front pay, and interest due thereon.

**WHEREFORE**, Plaintiff requests that this Honorable Court award her:

(a)    the sum of $300,000.00 in compensatory damages suffered because of the discrimination and retaliation

(b)    punitive damages;

(c)    back and front pay;

(d)      costs and reasonable attorneys' fees incurred with this lawsuit with interest thereon; and

(e)      other damages and further relief as deemed just.

## COUNT III
(Sexual Harassment in Violation of Title VII)

46. The foregoing paragraphs are incorporated herein as if set forth in full.

47. During the course of her employment, Plaintiff was subjected to repeated, unlawful and unwelcome instances of sexual harassment, including unwelcome sexual comments, conduct, and offensive touching by Planned Parenthood Delaware employee, Nicole Frost.

48. Despite Plaintiff's objections to such conduct, and her complaints to Ms. Frost, the sexual harassment continued.

49. Plaintiff's supervisor, Ms. Bostic was aware of Ms. Frost's conduct and witnessed it first hand on numerous occasions, but willfully failed to take any steps to prevent it from happening again or take any corrective measures. D'Andrea Walker, Director of Human Resources, also heard Ms. Frost make inappropriate and sexually explicit comments to Plaintiff but willfully failed to take any steps to prevent it from happening again or take any corrective measures.

50. The hostile sexual environment was created by and known to Defendant's supervisory personnel, who took no meaningful or effective action to terminate the offending behavior, to remove the offending environment or to discipline the offensive employees.

51. The illegal sexual conduct and comments had the purpose or effect of unreasonably interfering with Plaintiff's work performance, and created an intimidating, hostile, and offensive working environment.

52. The Defendant's employee's acts of sexual harassment as aforesaid Said violations were intentional, willful, and in reckless disregard of Plaintiff's rights.

53. Said violations warrant the imposition of punitive damages because of the Defendant's malice and reckless indifference to plaintiff's federally protected rights.

54. As a direct and proximate result of Defendant's unlawful sexual harassment by Planned Parenthood Delaware employee Nicole Frost, Plaintiff has been injured and has suffered, and will continue to suffer pain, fear, humiliation, anxiety, depression, mental anguish, emotional distress, physical manifestations of anxiety, lost wages, and lost benefits.

**WHEREFORE**, Plaintiff requests that this honorable Court award her:

    (a)    the sum of $300,000.00 in compensatory damages suffered because of the discrimination and retaliation

    (b)    punitive damages;

    (c)    back and front pay;

    (d)    costs and reasonable attorneys' fees incurred with this lawsuit with interest thereon; and

    (e)    other damages and further relief as deemed just.

## COUNT IV
(Violation of the FMLA)

55. The foregoing paragraphs are incorporated herein as if set forth in full.

56. Plaintiff was an eligible employee under the definitional terms of the FMLA.

57. Plaintiff requested leave from Defendant, her employer, with whom she had been employed for at least twelve (12) months pursuant to the requirements of 29 U.S.C.A. § 261 1(2)(i).

58. Plaintiff has at least 1,250 hours of service with the Defendant during her last full year of employment.

59. Defendant is engaged in an industry affecting commerce and employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

60. Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

61. Defendant, retaliated against Plaintiff, wrongfully disciplined her, and wrongfully discharged her, in retaliation for Plaintiff's exercise of, and attempts to exercise, her rights under the FMLA.

62. Defendant committed retaliation violations of the FMLA by terminating Plaintiff: (1) for requesting and/or exercising her FMLA rights and/or for taking FMLA-qualifying leave; (2) by considering Plaintiff's FMLA leave needs; (3) to dissuade Plaintiff and/or other employees from utilizing FMLA leave; and (4) to prevent her from taking further FMLA-qualifying leave in the future.

63. Defendant's retaliation violations were willful.

64. These actions as aforesaid constitute violations of the FMLA.

**WHEREFORE**, Plaintiff requests that this honorable Court award her:

(a) any and all damages as provided by 29 U.S.C. § 2617(a)(1), including, but not limited to lost wages, salary, employment benefits, back pay, front pay, interest, liquidated damages, and any and all other available pecuniary damages;

(b) punitive damages;

(c) costs and reasonable attorneys' fees; and

(d) other damages and further relief as deemed just.

## COUNT V
(Violation of the Delaware Law Against Discrimination)

65. The foregoing paragraphs are incorporated herein as if set forth in full.

66. Defendant subjected Plaintiff to a hostile working environment and otherwise discriminated against her with regard to the terms and conditions of her employment on the basis of her race (African-American), and retaliated against her in violation of 19 Del. § 710 et. seq.

67. The Defendant's acts of discrimination as aforesaid were intentional, willful, and in reckless disregard of Plaintiff's rights.

68. As a direct and proximate result of Defendant's unlawful discriminatory actions against Plaintiff in violation of the provisions stated above, Plaintiff has been injured and has suffered, and will continue to suffer pain, fear, humiliation, anxiety, depression, mental anguish, emotional distress, physical manifestations of anxiety, lost wages, and lost benefits.

**WHEREFORE**, Plaintiff requests that this Honorable Court award her:

(a) compensatory damages, including damages for emotional and physical pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and all other non-pecuniary losses;

(b) back pay, and front pay;

(c) punitive damages;

(d) costs and reasonable attorneys' fees; and

(e) other damages and further relief as deemed just.

## JURY DEMAND

Plaintiff requests trial by jury.

Respectfully submitted,

*/s/ Scott T. Earle*
Scott T. Earle, Esquire (#4541)
Zarwin Baum DeVito Kaplan Schaer Toddy, P.C.
1007 N. Orange Street, 4th Floor
Wilmington, Delaware 19801
Email: stearle@zarwin.com

|  |  |
|---|---|
|  | *Attorney for Plaintiff* |
|  |  |
|  | Of Counsel: |
|  | Zachary A. Silverstein, Esquire |
|  | Zarwin Baum DeVito Kaplan Schaer Toddy, P.C. |
| DATED: October 29, 2018 | 1818 Market Street, 13th Floor |
|  | Philadelphia, PA 19103 |